UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DAVID BROWN, M.D., et al., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:07cv01852SNLJ |
| ) | |
| FIRST HEALTH GROUP CORP., ) | |
| ) | |
| Defendant. ) | |

### ORDER AND MEMORANDUM

This matter is before the Court on Defendant's Motion to Dismiss (# 18), filed June 9, 2008. Plaintiffs responded on June 23, 2008 (#22) and Defendant filed a reply (#24) on July 3, 2008.

Plaintiffs, medical doctors, each individually entered into contracts with Defendant, First Health Group Corp. (formerly Affordable), to become part of Defendant's Preferred or Participating Provider Organization (hereinafter PPO). Under the agreement, the plaintiffs agreed to receive for their medical services lower payment rates established by the defendant in exchange for the potential of increased customers based on preference by health benefit payors such as insurance companies (hereinafter Payors) involved in the PPO. The bulk of the services provided were for the treatment of patients involved in worker compensation cases. All Plaintiffs entered into their own individual contracts with the defendant between 1992 and 2002. Regarding the terms applicable to this case, all contracts contained identical language except for the contract between Plaintiff Dr. Lux and Defendant.

In addition to establishing a PPO relationship, the contracts gave Defendant the right to amend any part of the contract with notice. All plaintiffs had the right to reject most amendments

within 45 days of notice of the amendment.  With regards to rate amendments, however, Dr. Lux was the only plaintiff with the right of rejection.  In addition, the contract gave Plaintiffs the right to terminate the contract with notice given 120 days before the contractually established Anniversary Date of June 1st of each year.

Plaintiffs allege that on or about May 23, 2005, Plaintiff Dr. Rotman received a letter from Defendant dated April 13, 2005.  The letter stated that it was notice of an amendment to the Provider Agreement reducing the reimbursement rate.  Plaintiffs state that on May 27, 2005, Plaintiffs submitted formal written notice to Defendant stating their non-acceptance of the rate decrease and, in the alternative, terminating their contracts on September 27, 2008.  Plaintiffs allege that Defendant refused both the non-acceptance and the termination and continued to instruct Payors to pay the new reduced rate.  Plaintiffs bring claims for breach of contract, breach of implied covenant of good faith and fair dealing, tortious interference with a business expectancy, and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act.  Defendants filed a Motion to Dismiss all counts.

**I.  Standard**

The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted is to test the legal sufficiency of a complaint so as to eliminate those actions "which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity."  Young v. City of St. Charles, 244 F.3d 623, 627 (8th Cir. 2001) *quoting* Neitzke v. Williams, 490 U.S. 319, 326-27 (1989).  A complaint must be dismissed for failure to state a claim if it does not plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1974 (2007) (abrogating the prior "no set of facts" standard set forth in Conley v. Gibson, 355U.S. 41, 45-46

(1957)). Courts "do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." Id.; 127 U.S. at 1974. A complaint must set forth factual allegations that are enough to "raise a right to relief above the speculative level." Id.; 127 U.S. at 1974.

In passing on a motion to dismiss, a court must view the allegations of the complaint in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232 (1974); Kottschade v. City of Rochester, 319 F.3d 1038, 1040 (8th Cir. 2003). Although a complaint challenged by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff must still provide the grounds for relief, and neither "labels and conclusions" nor "a formulaic recitation of the elements of a cause of action" will suffice. Bell Atlantic Corp. v. Twombly, 127 S.Ct. at 1265 (internal citations omitted). "Although the pleading standard is liberal, the plaintiff must allege facts--not mere conclusions--that, if true, would support the existence of the claimed torts." Moses.com Securities v. Comprehensive Software Systems, Inc., 406 F.3d 1052, 1062 (8th Cir. 2005) *citing* Schaller Tel. Co. v. Golden Sky Systems, 298 F.3d 736, 740 (8th Cir. 2002). In viewing the complaint in the light most favorable to the plaintiff, the court should not dismiss it merely because the court doubts that the plaintiff will be able to prove all of the necessary allegations. Bennett v. Berg, 685 F.2d 1053, 1058 (8th Cir. 1982). The primary issue for a court to consider is not whether the plaintiff will ultimately prevail in the lawsuit, but whether the complaint adequately states a claim so that the plaintiff is entitled to present evidence in support of that claim. A complaint may not be dismissed based upon a district court's assessment that the plaintiff will fail to prove one or more claims to the satisfaction of the complaint's allegations or will ultimately fail to prove one or more claims to the satisfaction of the factfinder. Bell Atlantic Corp. v. Twombly, 127 S.Ct. at 1969, n. 8; Neitzke v. Williams, 490 U.S. at 327 ("What Rule

12(b)(6) does not countenance are dismissals based upon a judge's disbelief of a complaint's factual allegations.") With this plausibility standard in mind, this Court turns to an examination of the plaintiff's complaint.

## II. Breach of Contract

Plaintiffs' amended complaint alleges that the letter from defendant dated April 13, 2005, was insufficient notice. It alleges that: (1) the notice was not actually received until May 23, 2005, and thus the letter was backdated to meet the April 15 notice requirement; (2) regardless of when the letter was sent, notice should be measured from the date notice was received, May 23, 2005; (3) notice was not effective against these plaintiffs who did not receive a notice letter; and (4) plaintiffs had a right to reject the amendment. Therefore, any amendment to the agreement over the rejection or contract termination amounted to a breach.

### A. Generally

The contracts of Plaintiffs Doctors Brown, Miller, Rotman, Taylor, and Paletta contain a choice of law provision providing for the application of Illinois law. Under Illinois law, to plead a cause of action for breach of contract, the plaintiff must allege (1) there is a valid contract between the parties, (2) there was a breach of the contract by the defendant, (3) plaintiff performed all conditions under the contract, and (4) the plaintiff was damaged as a result of the breach. Klem v. Mann, 665 N.E.2d 514, 518 (Ill. App. Ct. 1996); Henderson-Smith & Associates, Inc. v. Nahamani Family Service Center, Inc., 752 N.E.2d 33, 43 (Ill. App. Ct. 2001). Dr. Lux's contract provides for the application of California law. California law has the same requirements. *See, e.g.*, Armstrong Petroleum Corp v. Tri-Valley Oil & Gas Co., 11 Cal. Rptr. 3d 412, 425 (Cal. App. 5d 2004). The only element in dispute is whether there was a breach by the defendant.

Defendant argues in its Motion to Dismiss that there has been no breach of contract because: (1) it had no duty to "reprice" Plaintiffs bills to Payor thus any dispute over inadequate payment is a price dispute with Payors; (2) regardless of allegations of backdating, Defendant gave notice; and (3) there was no right to terminate the contract on September 27, 2005.

**B. Repricing**

Defendant's first argument is that it had no duty to reprice the bills sent by Plaintiffs to Payors and thus this case is simply a pricing dispute with the Payors, not a breach of contract claim. That the Defendant may not have individually repriced bills sent to Payors is immaterial to the outcome of the breach of contract claims. Plaintiffs allege in their amended complaint that Defendant "[i]nstruct[ed] insurance Payors to reimburse Plaintiff's claims at a reduced rate not agreed upon by the Parties or provided under the contract" as well as "[r]efus[ed] to submit Plaintiff's claims to insurance Payors at the amounts provided for under Plaintiff's Agreement" and "repric[ed] claims with reimbursement rates without proper notice under the contact." Plaintiff's Complaint ¶¶ 37b, 37c, 37m. Plaintiffs need not prove in their complaint the exact claim procedure followed by Defendant. The only important consideration is if the rate adjustment breached Defendant's contract with Plaintiffs.

It is clear from the face of the contract that Defendant would enter into a "Payor Agreement" with a Payor under which "Participating Providers" would "render health care services pursuant to this Agreement to Participating Patients at the reimbursement amounts set forth herein." Plaintiff's Exhibit B, Article 2, 2.8. The amount for repayment was then established in Appendix A pursuant to Article 4.2(a). Plaintiff's Exhibit B, Article 4, 4.2(a). Thus, any changes to this pricing scheme required amendment to the contract through the procedures established in Article 5.1. If the Defendant amended the pricing schedule followed by

5

Payors without proper amendment to Plaintiffs' contracts it gave rise to a breach of contract claim.

### C. Right to Amend the Agreement--Notice

The majority of Plaintiffs' allegations of breach center on whether proper notice was given of the amended rates at least 45 days before the Anniversary Date of June 1, 2005, as required by the contract. To properly assess the breach of contract claims the plaintiffs need to be divided into three groups: Dr. Rotman, Dr. Lux, and all other Plaintiffs.

#### 1. Dr. Rotman

The language in Dr. Rotman's contract pertaining to rate amendment is the same as that of all Plaintiffs except Dr. Lux. The agreement provides that:

> 5.1 AMENDMENT
> This Agreement may be amended at any time in writing by **First Health** and such amendment shall automatically become effective forty-five (45) days from the date the notice of amendment is issued by **First Health** to provider unless formal written notice of non-acceptance of the amendment in its entirety is received by **First Health** within the forty-five (45) day period. Notwithstanding the foregoing, an amendment to the rates set forth in Appendix A shall be effective on the next Anniversary Date of this Agreement at least 45 days after notice of the amendment.

According to Plaintiffs' amended complaint, Dr. Rotman received a letter from First Health on May 23, 2005, notifying him of a rate amendment to take affect on June 1, 2005. Plaintiffs allege that although dated April 13, 2005, the letter was not actually received until May 23, 2005. Plaintiffs claim that the large discrepancy in time is due to the fraudulent backdating of the letter by First Health. They allege that Defendant backdated the letter in order to make it appear as though they had given notice at least 45 days prior to the 2005 Anniversary Date. In addition, Plaintiffs argue that within the contract notice is a verb and thus the date of measure for the notice requirement was when the letter was received and not the date it was written.

6

Defendant responds in two ways. First, it argues that the contract is clear on its face that notice is to be measure from the date the notice is issued by First Health. This Court agrees. The clear language of the contract states that the amendment shall become effective "forty-five (45) days from the date the notice of amendment *is issued by **FIRST HEALTH** to Provider.*" Plaintiff's Exhibit B, Article 5.1 (emphasis added). The date of notice is measured from whatever date the notice was sent from First Health.

Plaintiffs, however, also argue that notice was not given 45 days prior to the Anniversary Date because notice was not actually issued on April 13, 2005. Defendant tries to rebut this argument by stating that there is no language in the contract that creates a duty to date correspondence on the date written. Thus, whether or not there was backdating, the April 13, 2005 date should apply. As Plaintiffs note in their claim for violation of the implied covenant of good faith and fair dealing, every contract imposes upon each party a duty to perform and enforce the contract with good faith and fair dealing. Zick v. Verson Allsteal Press Co., 623 F.Supp. 927, 928 (N.D. Ill. 1985). The doctrine is generally used to determine the intent of parties where a contract is susceptible to two conflicting constructions. Northern Trust Co. v. VIII South Michigan Associates, 657 N.E.2d 1095, 1104 (Ill. App. Ct. 1995) *citing* Resolution Trust Corp. v. Holtzman, 619 N.E.2d 418 (Ill. App. 3d 1993). The covenant requires that the party that has the right to exercise discretion act "reasonably, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectation of the parties. Id. *citing* Continental Mobile Telephone Co. v. Chicago SMSA Ltd. Partnership, 587 N.E.2d 1169 (Ill. App. 3d 1992). This Court finds that the meaning of "date of notice" did not give Defendant the discretion to date a letter of notice to any date of its choosing. Even absent this clarity, however, Defendant was required to act in a reasonable manner. Plaintiffs's pleadings that the letter was fraudulently

7

dated April 13, 2005, demonstrated by the receipt on May 23, 2005, asserts enough facts to survive a Motion to Dismiss.

Dr. Rotman pleads enough facts for a breach of contract claim. Amending the rates without notice would constitute a breach of contract. Defendants Motion to Dismiss as to Count III is denied.

### 2. Dr. Lux

Dr. Lux's contract provides for the application of California rather than Illinois law and has different terms governing amendment. California has essentially the same requirements for establishing a breach of contract claim. *See, e.g.* Armstrong Petroleum Corp v. Tri-Valley Oil & Gas Co., 11 Cal. Rptr. 2d 412, 425 (Cal. Dist. Ct. App. 2004). Dr. Lux signed an agreement with Affordable, now First Health, stating that:

> 5.1 AMENDMENT
> This Agreement may be amended at any time in writing by AFFORDABLE and such amendment shall automatically become effective forty-five (45 days) from the date the notice of amendment is issued by AFFORDABLE to Provider unless formal written notice of non-acceptance of the amendment in its entirety is received by AFFORDABLE within the forty-five (45) day period.

There are no other terms in the contract governing amendment and no specific terms providing for amendment of rates. Dr. Lux had the right to not accept any amendment including rate amendments. In addition to the issue of lack of notice that will be discussed below, there was no right for the Defendant to amend Dr. Lux's rate schedule over his formal written objection. The letter sent by Dr. Rotman to First Health expressly stated that it was a rejection by all Participating Providers in The Orthopedic Center of St. Louis. The formal letter of non-acceptance was sent within 45 days of either April 13, 2005, or May 23, 2005.

The only argument that Defendant brings forward for why there is no breach of contract with Dr. Lux is that it had no duty to reprice the bills. As noted above, it is immaterial whether

8

Defendant repriced or simply gave the amended rate schedule to Payors. If Defendant breached it did so by amending without proper notice or, in this case, over a proper notification of non-acceptance.

Dr. Lux has properly pled enough facts to establish a claim for breach of contract in his pleadings. The Motion to Dismiss as to Count V is denied.

### 3. Doctors Brown, Miller, Taylor, and Paletta

The final group contains the remaining plaintiffs Doctors Brown, Miller, Taylor and Paletta. These plaintiffs had the same language in their contracts as Dr. Rotman that allowed for automatic rate amendment, despite objection, on the next Anniversary Date at least 45 days after notice of amendment is issued. According to Plaintiffs amended complaint, however, Defendant failed to provide notice to these plaintiffs. Plaintiffs allege that the letter was only addressed to Dr. Rotman as an individual and thus does not serve as notice to the other plaintiffs. Defendant does not address this issue in their Motion to Dismiss. Again, the only argument is that they lacked a duty to reprice the bills sent by Plaintiffs to Payors.

Plaintiffs have alleged enough facts in their amended complaint to assert a breach of contract claim for improper amendment. The Motion to Dismiss Counts I, II, IV, and VI is denied.

## III. Remedies

In their amended complaint Plaintiffs request actual damages due to decreased payment but also punitive damages, attorney's fees, costs, and any other damages this Court finds appropriate. Defendant contends that, under the terms of the contracts, damages are to be limited to "payment of claims for services rendered." Defendants are correct that Illinois law recognizes and enforces exclusive remedy provisions in contacts. *See* Omnitrus Merging Corp. v. Illinois

9

Tool Works, Inc., 628 N.E.2d 1165, 1168 (Ill. App. 3d 1993). Defendants are also correct that, "[w]here a contract is unambiguous, its express provisions govern and its language, as a whole, is to be given its plan and ordinary meaning." O'Shield v. Lakeside Bank, 781 N.E.2d 1114, 1119 (Ill. App. 3d 2002). For discussion of remedies the plaintiffs must be divided into two groups, Dr. Lux and all other plaintiffs. The applicable provision in the contracts of all plaintiffs except Dr. Lux, Article 5.12, reads:

> . . . the payment of claims for services rendered shall be the sole remedy for disputes with Payors involving nonpayment of said claims. **First Health** shall not be liable for actual damages, liquidated damages, consequential damages, legal fees or other expenses incurred as a result of claims disputes with Payors.

The ordinary and plain language of this clause states that it applies to claim disputes with Payors for non-payment. The case before this court is a breach of contract claim between Providers and First Health. The Payors did not simply refuse to pay a Provider despite a contractual obligation. Nor is it alleged that the Payors attempted to pay a price different than what was given to them by Defendant. The allegation in this case is that Defendant breached its contractual duty and improperly informed Payors of an amended rate schedule. This dispute is not with Payors, it is with First Health. This remedies clause is not applicable.

Dr. Lux's contract, however, contains different language limiting remedies. The applicable language in his contract reads:

> The sole remedy for any claims related to reimbursement for Participating Provider's services shall be payment of the bill for services rendered. AFFORDABLE shall not be liable for actual damages, liquidated damages, consequential damages, legal fees or other expenses as a result of any claim.

Dr. Lux's contract applies the limitation of remedies to claims related to reimbursement not to claims related to disputes with Payors involving reimbursement. The question that must be

10

answered with regards to Dr. Lux is whether a claim for breach of contract due to an improper rate amendment is a "claim related to reimbursement for Participating Provider's services."

Under California law "whether an exculpatory clause 'covers a given case turns primarily on contractual interpretation, and it is the intent of the parties as expressed in the agreement that should control.'" CAZA Drilling (California), Inc. v. TEG Oil & Gas U.S.A., Inc., 148 Cal. Rptr. 3d 271, 281 (Cal. App. 2d 2006) *quoting* Burnett v. Chimney Sweep, 20 Cal. Rptr. 3d 562,123 Cal. App. 4th 1057, 1066 (Cal. App. 2d 2004) (internal citations omitted). To determine the intent of the parties the court must look at the language of the contract. "Generally, the words of a contract are to be understood in their ordinary and popular sense unless a contrary intent is shown." Franklin v. Marie Antoinette Condominium Owners Assn., 23 Cal. Rptr. 2d 744, 19 Cal. App. 4th 824, 829 (Cal. App.2d 1993) *quoting* Appalachian Ins. Co. v. McDonnell Douglas Corp., 262 Cal. Rptr. 716, 214 Cal. App. 3d 1, 11 (Cal. App 4th 1989). "The interpretation of a written contract is solely a judicial function unless the interpretation turns on the credibility of extrinsic evidence." Id.

In Dr. Lux's case the terminology "claims related to reimbursement" necessarily includes claims for breach of contract for reducing the amount of reimbursement. Those claims are directly related to reimbursement. There is no ambiguity, and the intent of the parties is clear. As such, Defendant's Motion to Dismiss Plaintiffs' prayer for actual damages, punitive damages, costs, and other relief as it applies to Dr. Lux is granted.

**IV. Implied Covenant of Good Faith and Fair Dealing**

Both parties appear to agree that, under Illinois law, there is a general duty of good faith and fair dealing in the performance and enforcement of a contract. The plaintiffs outlined the doctrine as a separate claim in their Amended Complaint but, as the defendant points out in its

Motion to Dismiss and the plaintiffs accept in their response, it is not a separate cause of action but rather an allegation in conjunction with a properly pled breach of contract claim. *See* Voyles v. Sandia Mortg. Corp., 751 N.E.2d 1126, 1131 (Ill. 2001). The court will dismiss the separate counts of breach of the implied covenant of good faith and fair dealing and instead consider the facts and allegations pled in their proper relationship with the breach of contract claims.

Defendant's Motion to Dismiss Counts VII-XII is granted.

**V. Tortious Interference with a Business Expectancy**

Plaintiffs' Amended Complaint alleges that the amended price rates enacted by First Health on June 1, 2005, were less than what they would have received under Missouri Workers Compensation laws even without a contract with Defendant. Plaintiffs claim, therefore, that Defendant interfered with the expected relationship between Plaintiff and Payors. Defendant argues that Plaintiffs do not state a valid claim for tortious interference because (1) they are not able to demonstrate that the defendant acted without justification; (2) they are not able to demonstrate any resulting loss caused by Defendant; and (3) Defendant cannot interfere with its own contract. As a tort action, these counts are not governed by the choice of law provisions in the contracts and, instead, will be governed by Missouri law.

Under Missouri law, to bring a claim for tortious interference a plaintiff must allege (1) a contract exists of "valid business relationship or expectancy;" (2) the defendant has knowledge of the contract or relationship; (3) the defendant interferes with the contract or relationship; (4) Defendant lacked justification; and (5) damage to the plaintiff resulted. Defino v. Civic Center Corporation, 718 S.W.2d 505, 511 (Mo. App. 1986); Nazeri v. Missouri Valley College, 860 S.W.2d 303, 316 (Mo. banc 1993). Plaintiffs allege that whether or not there existed a valid contract with Defendant, they had an expectancy of payment of at least the amount granted under

12

Missouri Workman Compensation laws and thus there was an interference in either situation. This argument, however, fails to acknowledge that the contract between Plaintiffs and Defendant superceded any business expectancy Plaintiffs might otherwise have.

The defendant, however, correctly notes that where there is an existing economic interest "such as a prior contract of his own" a party has a right to interfere to protect his own economic interest. Community Title Co. v. Roosevelt Fed. Sav. & Loan Ass'n, 796 S.W.2d 369, 372 (Mo. banc 1990). If Defendant had an existing contract with Plaintiffs that Plaintiffs would receive reduced payment from parties that Defendant had negotiated with, then there existed an economic interest for Defendant. Defendant's business is based on contracting with Providers and Payors to offer increased patient referrals in exchange for discounted costs of care. As long as there was an existing contract Defendants had an present economic interest and to interfere without incurring tort liability.

It matters, therefore, whether a contractual relationship existed between Defendant and Plaintiff at the time of the alleged interference. Plaintiffs state in their amended complaint that in the letter dated May 27, 2005, they gave Defendant notice of non-acceptance of the rate change or, in the alternative, termination of the contracts 120 days later, effective September 27, 2005. Under the terms of the contract, however, Plaintiffs only had the right to terminate the contract at least 120 days before the Anniversary Date after which it would take affect. The notice given May 27, 2005, was not at least 120 days before the June 1, 2005, deadline. Thus, any termination of the contract did not take affect until June 1, 2006.

Plaintiffs have not pled any facts in their amended complaint that allows the court to find that there did not exist a valid contract at the time of the alleged interference. Thus, Defendant's economic interest allowed any interference that is alleged to have occurred.

13

Defendants Motion to Dismiss Counts XIII-XVIII is granted.

**VI. Illinois Consumer Fraud and Deceptive Business Practices Act**

Plaintiffs allege that Defendant's actions, in addition to constituting a breach of contract, also violate the Illinois Consumer Fraud and Deceptive Practices Act. Under the act, to prove a private cause of action " a plaintiff must establish: (1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception." Avery, et al. v. State Farm Mutual Automobile Insurance Co., 835 N.E.2d 801, 850 (Ill. 2005) *citing* Oliveria v. Amoco Oil Co., 776 N.E.2d 151 (Ill. 2002).

Plaintiffs allege in their amended complaint that (1) Defendant "willfully, unfairly, and deceptively" repriced claims and (2) "removed Plaintiffs from Defendant's preferred provider list." Defendant's Motion to Dismiss argues that Plaintiffs have simply restated their claim for breach of contract. To a large extent this is true. Plaintiffs' allegation of fraudulent and deceptive repricing of claims is simply an argument that Defendant failed to give Plaintiffs proper notice as required by the contract before amending the rate schedule. A breach of contract claim alone does not rise to the level of a Consumer Fraud Act violation. Sklodowsk v. Countrywide Home Loans, Inc., 832 N.E.2d 189, 196-97 (Ill. App. 2005). An additional fraudulent act that is not a contract term, however, goes beyond a breach of contract claim and can amount to a Consumer Fraud Act violation. Gehrett v. Chrysler Corp., 882 NE.2d 1102, 1115 (Ill. App. 2d 2008). The repricing of claims and being removed from the preferred provider list involve nothing more than breach of contract terms, as such, neither can amount to a Consumer Fraud Act violation.

14

Further, in addition to being able to meet the five requirements of the act itself, to survive a motion to dismiss Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1974 (2007). The Illinois Supreme Court has held that the Consumer Fraud Act does not "apply to fraudulent transactions which take place outside Illinois." Avery, et al. v. State Farm Mutual Automobile Insurance Co., 835 N.E.2d 801, 853 (Ill. 2005). Defendant argues that because Plaintiffs are all citizens of Missouri who practice in Missouri and have Missouri patients there can be no application of the Illinois Consumer Fraud Act. This is a simplification of what the Illinois Supreme Court has established. The Illinois Supreme Court looked at the legislative history along with traditional rules of construction in Illinois to find that the Consumer Fraud Act was not intended to have extra territorial effect. *Id.* at 852. The court went on though to discuss factors mentioned in previous cases to determine where the effect of a consumer transaction is located. These factors included where the contract was drafted, where the contract was executed, Defendant's principal place of business, choice-of-law provisions, where complaints were directed, and where payments were sent. *Id.* at 852-55 *citing* Avery, et al. v. State Farm Mutual Automobile Insurance Co., 746 N.E.2d 1242 (Ill. App. 3d 2001) *also citing* Martin v. Heinold Commodities, Inc., 510 N.E.2d 840 (Ill. 1987). Plaintiffs' allegations fail to address most of these critical factors. The court only has before it that Plaintiffs are Missouri Citizens who practice in Missouri and have Missouri patents. Plaintiffs have not plead enough facts to make recovery plausible and without facts demonstrating that this fraudulent actions related to an Illinois consumer transaction.

Motion to Dismiss Counts XIX through XXIV is granted.

**VII. Declaratory Judgment**

Plaintiffs amended complaint requests declaratory judgment from the Court that: (1) there was a contractual agreement between the parties; (2) Defendant breached the agreement; (3) Defendant breached the implied duty of good faith and fair dealing; (4) the agreement was terminated on September 27, 2007; (5) Defendant tortiously interfered with Plaintiff's business expectancy; and (6) Defendant violated the Illinois Consumer Fraud and Deceptive Business Practices Act.

Generally, Declaratory Judgment is granted to allow parties to a dispute determine the consequences of their actions before they change their position. Illinois State Toll Highway Authority v. Amoco Oil Co., 783 N.E.2d 658, 662 (Ill. App. 2d 2003) *citing* Eyman v. McDonough District Hospital, 613 N.E.2d 819 (Ill App. 3d 1993). It is not intended to be used by parties that have already acted to have the court declare that they acted properly. Eyman, 613 N.E.2d at 821; Lane v. Lensmeyer, 158 S.W.3d 218, 222 (Mo. banc 2005) *quoting* Mo. Soybean Ass'n v. Mo. Clean Water Comm'n, 102 S.W.3d 10, 25 (Mo. banc 2003) (noting that declaratory judgment is proper only where there is no adequate remedy at law).

Items one through four of Plaintiffs' request for declaratory judgments are merely claims for breach of contract. The choice of law provision requires the application of Illinois law to the contractual disputes. Under Illinois law, "a breach of contract claim is an action at law and is not a proper subject for declaratory judgment." Eyman, 613 N.E.2d at 821 *citing* Flashner Medical Partnership v. Marketing Management, Inc., 545 N.E.2d 177 (Ill. App. 3d 1989); Warren v. Kaiser Foundation Health Plan, Inc., 121 Cal. Rptr. 19, 22 (Cal. App. 1975) (noting that a court may refuse to entertain a declaratory judgment action where the acts have already occurred absent a continuing contractual relationship between the parties).

For all other claims Missouri law applies. Under Missouri law, a declaratory judgment requires: (1) a justiciable controversy that is real and presently-existing; (2) the plaintiff must have "a legally protectable interest at stake, 'consisting of a pecuniary or personal interest directly at issue and subject to immediate or prospective relief;'" (3) the issue must be ripe; and (4) there is no adequate remedy at law. Lane v. Lensmeyer, 158 S.W.3d 218, 222 (Mo. banc 2005) *quoting* Mo. Soybean Ass'n v. Mo. Clean Water Comm'n, 102 S.W.3d 10, 25 (Mo. banc 2003). Plaintiffs have an adequate remedy at law for all claims mentioned. All actions are past and the parties do not need a ruling on which they can rely before they change their position. This court declines the discretion given by the Federal Declaratory Judgment Act to issue a declaratory judgment.

On all counts Declaratory Judgment would be inappropriate. Defendant's Motion to Dismiss Counts XXV through XXX is granted.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss (# 18) Counts I through VI for breach of contracts is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss all damages beyond payment for services rendered is **DENIED** as to Plaintiffs Brown, Miller, Rotman, Taylor, and Paletta.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss all damages beyond payment for serves rendered is **GRANTED** as to Plaintiff Lux.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss Counts VII through XII for breach of covenant of good faith and fair dealing, Counts XIII through XVIII for Tortious Interference with a Business Expectancy, Counts XIX through XXIV for violation of the Illinois

Consumer Fraud and Deceptive Business Practices Act, and Counts XXV through XXX requesting Declaratory Judgment is **GRANTED**.

Dated this   20th   day of February, 2009.

                                              _/s/ Stephen L. Limbaugh, Jr._
                                              UNITED STATES DISTRICT JUDGE